IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GreenHouse International, LLC<br><br>Plaintiff,<br><br>v.<br><br>Moulton Logistics Management, Inc.<br><br>Defendant. | C.A. No. 1:07-cv-00722-GMS-LPS<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY BRIEF**
**IN SUPPORT OF PLAINTIFF'S MOTION TO ENJOIN**

February 15, 2008

WOMBLE CARLYLE SANDRIDGE
 & RICE, PLLC

George Pazuniak (#478)
James M. Lennon (# 4570)
Anna Martina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

Attorneys for *Plaintiff*

# **TABLE OF CONTENTS**

                                                                                     Page

ARGUMENT ................................................................................................................................. 1

I.      Plaintiff's Reliance On The *All Writs Act* Is Appropriate And Applicable To This Litigation .............................................................................................................................. 1

          A.     *All Writs* Injunctions Are Not As Circumscribed As Moulton Suggests ................ 1

          B.     Moulton Cites No Authority To Support Its Attempt To Have The California Court Circumvent This Earlier Filed Action .......................................................... 3

          C.     The *In Rem* Contest For Possession Of The Database Further Justifies An *All Writs* Injunction ..................................................................................................... 4

II.     Moulton's Wrongful Possession Of The Database Exempts Arbitration ........................... 5

          A.     GreenHouse's Prayer For Injunctive Relief Is Sufficient ....................................... 5

          B.     Moulton Sought To Extort Greenhouse By Demanding Release In Exchange For Database ................................................................................................................ 6

          C.     The Arbitration Clause Exemption Is Unambiguous Despite Moulton's Attempts To Inject Vagary .................................................................................................... 8

          D.     Moulton Does Not Have The Right To Deny Greenhouse The Database .............. 9

CONCLUSION ............................................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                  **Page**

*Allstate Ins. Co. v. Rossi Auto Body, Inc.*, 787 A.2d 742, 744-45 (Del. Super. 2001) .................... 5

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295, (1970)................... 1, 2

*Central Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445, 451 (S.D.Ala. 2002)............................. 3

*Cousins v. Wigoda*, 463 F.2d 603, 606 (7th Cir. 1972) ................................................................ 4

*Doctor's Associates, Inc. v. Distajo*, 944 F.Supp. 1007 (D. Conn. 1996)....................................... 3

*Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322 (3rd Cir. 2007) ........................... 2, 3

*In Re Baldwin*, 770 F.2d 338 (2nd Cir. 1985)................................................................................ 1

*In re Diet Drugs Prods. Liab. Litig. II*, 369 F.3d 293, 335 (3d Cir.2004)..................................... 2

*James v. Bellotti*, 733 F.2d 989, 993 (C.A. Mass. 1984) ............................................................... 5

*Port Erie Plastics, Inc. v. Uptown Nails*, LLC, 173 Fed.Appx. 123 (3rd Cir. 2006) ..................... 4

*Rushton v. Shea*, 419 F.Supp. 1349, 1362-63 (D. Del. 1976).............................................................. 5

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641 (1977))............................................................. 5

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) ....................................................... 1, 2

*Wisconsin v. Constantineau*, 400 U.S. 433 ................................................................................... 4

*Woodmen of the World Life Ins. Soc'y v. Johnson*, 23 F.Supp.2d 1344, 1345 (S.D.Ala.1998)...... 3

**Statutes / Rules**

*All Writs Act*, 28 U.S.C. § 1651 ....................................................................................... 1, 2, 3, 4

*Anti-Injunction Act*, 28 U.S.C. § 2283 ....................................................................................... 2, 5

*Federal Arbitration Act*, 9 U.S.C. § 4............................................................................................ 4

Fed. R. Civ. P. 8........................................................................................................................... 6

**Other Authorities**

Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U.Chi.L.Rev. 717, 754 (1977) . 2

*Woolley's Practice in Civil Actions*, § 1533 (1906)....................................................................... 5

# ARGUMENT

I. **Plaintiff's Reliance On The *All Writs Act* Is Appropriate And Applicable To This Litigation**

Moulton's petition to compel arbitration before the California Superior Court ("California Action") threatens to frustrate these proceedings and disrupt the orderly resolution of this litigation by directly undermining this Court's path to judgment. This Court may issue an injunction under the *All Writs Act*[1] enjoining the California Action in order to preserve its right to fully consider the matter before it, including the threshold question of arbitrability.

A. *All Writs* Injunctions Are Not As Circumscribed As Moulton Suggests

Moulton suggests that the *All Writs Act* may be invoked only in certain cases.[2] That is incorrect, and unsupported by any authority. The *All Writs Act* is available whenever a state court action threatens to impair the federal court's flexibility and authority to decide the case.[3]

Contrary to Moulton's assertion, *All Writs* injunctions do not require an existing federal order or judgment, and they are not reserved for complex litigation involving a substantial class of persons from multiple states. Nor are *All Writs Act* injunctions confined to *in rem* cases. *In Re Baldwin*, 770 F.2d 338 (2nd Cir. 1985), cited by Moulton, stands for the proposition that the "risk of inconvenience or duplicative litigation" from parallel *in personam* actions may not *by itself* warrant an injunction, but an injunction is warranted in such situations when a later state court action threatens to "seriously impair the federal court's flexibility and authority. . . ."[4]

In *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996), misconstrued by Moulton, the Seventh Circuit held: "the "necessary in aid of jurisdiction″ [language in the *Anti-Injunction*

---

[1] 28 U.S.C. § 1651(a)
[2] D.I. 10, p. 2.
[3] *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295, (1970).
[4] *Id*. at 337 (*quoting Atl. Coast Line*, at 295).

1

*Act*'s[5]] exception [to the *All Writs Act*] should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.'"[6]

The central point, ignored by Moulton, is that the California Action is not merely a parallel litigation, but seeks to dispossess this Court's right and ability to decide the matter that had been previously presented to it. If the California Superior Court rules in favor of Moulton, the judgment will preclude this Court's ability to decide any issues and render its jurisdiction nugatory.

Moulton agrees that, "under the *All Writs Act*, federal courts are permitted to issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law,"[7] but then mischaracterizes *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322 (3rd Cir. 2007) and *In re Diet Drugs Prods. Liab. Litig. II*, 369 F.3d 293, 335 (3d Cir.2004). *Grider* acknowledged that *All Writs* injunctions should only issue in narrow circumstances, but the Third Circuit never suggested that these circumstances are confined to complex class action settlements and multidistrict litigations.[8] In fact, injunctions under the *All Writs Act* have been issued by other district courts in relatively non-complex matters involving

---

[5] 28 U.S.C. § 2283
[6] *Id*. at 1202 (*quoting* Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U.Chi.L.Rev. 717, 754 (1977).
[7] D.I. 10, p. 3 (*citing* 28 U.S.C. § 1651).
[8] *Grider* 500 F.3d at 330, n.3 (*noting* that complex class action cases are only one "category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" and "[w]hat is ultimately important, in any event, is that in both [*in rem* and *in personam*] cases state actions over the same subject matter have the potential to 'so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case.' " (*quoting In re Diet Drugs Prods. Liab. Litig. II*, 369 F.3d at 335 (3d Cir.2004) and *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295, (1970))).

orders to compel arbitration.[9] These cases invoked the *All Writs Act* even though the enjoined state court actions involved more than the single question of arbitrability. By contrast, the California Action is narrowly focused on the single question of whether this Court should proceed with the present action. Thus, any potential encroachment upon the California Superior Court's sovereignty is *de minimus*. Yet it is crucial to ensuring this Court's flexibility and authority to decide this case.

    B.    <u>Moulton Cites No Authority To Support Its Attempt To Have The California Court Circumvent This Earlier Filed Action</u>

Moulton cites no authority that would allow a Defendant to extinguish a federal court's admitted personal and subject matter jurisdiction over a matter by seeking an order from a state court in a subsequent action effectively enjoining the plaintiff's prosecution of the federal action. Such action is a paradigm of potential impairment of the federal court's flexibility and authority to decide the case, including the threshold issue of arbitrability. This is exactly the situation in which *All Writs* injunctions are deemed necessary.[10]

Moulton asserts that its California petition did not explicitly seek to enjoin GreenHouse from continuing the action in this Court, but this is the effect of the relief it seeks. Whether and how GreenHouse can proceed with its pending litigation is a question for this Court to decide. By merely presenting this question to the California Court, after this Court acquired jurisdiction over the parties and subject matter, Moulton is threatening to divest this Court of the power to fully decide the matter before it.

The Agreement specifies that any contractually agreed-upon arbitration should proceed in

---

[9] *See, e.g., Doctor's Associates, Inc. v. Distajo*, 944 F.Supp. 1007 (D. Conn. 1996); *Central Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445, 451 (S.D.Ala. 2002); *Woodmen of the World Life Ins. Soc'y v. Johnson*, 23 F.Supp.2d 1344, 1345 (S.D.Ala.1998).

[10] *Grider* at 328. ("[t]ypically the *All Writs Act* has been used by federal courts to enjoin action

3

Los Angeles, California. This might have made California an appropriate forum to seek such a petition had GreenHouse not already filed this case on its home-turf in Delaware. But once this Court obtained jurisdiction over the parties and the dispute, any petition to a California court should have waited until this Court decided whether to stay the action pending arbitration.[11] In any event, should this Court determine that any of GreenHouse's pending claims must be arbitrated, Moulton's petition to compel would be moot because GreenHouse agrees that the claims must be arbitrated in Los Angeles.

    C.    The *In Rem* Contest For Possession Of The Database Further Justifies An *All Writs* Injunction

Moulton also contends it is irrelevant that the jurisdiction of this Court was invoked before the California Action was filed, because, it argues, this is an *in personam* rather than an *in rem* action. Moulton is wrong on the law and the facts. First, as noted above, the *All Writs Act* is not confined to *in rem* cases.[12] Second, less deference is given to state judicial process when federal jurisdiction is invoked before the state action is commenced.[13] Finally, the replevin and misappropriation claims in GreenHouse's complaint are *in rem* disputes. GreenHouse has asked

---

by state courts that threatens the federal court's jurisdiction.").

[11] While the Third Circuit has interpreted 9 U.S.C. § 4 of the Federal Arbitration Act to mean that district courts "lack[] authority to compel arbitration at all, even in their own districts, when the agreement specifies that arbitration is to take place in a different venue," *Port Erie Plastics, Inc. v. Uptown Nails*, LLC, 173 Fed.Appx. 123 (3rd Cir. 2006), this does not mean that district courts lack the authority to decide the question of arbitrability by the issuance of a stay pursuant to 9 U.S.C. § 3.

[12] *Supra*, p. 1.

[13] *See, e.g., Cousins v. Wigoda*, 463 F.2d 603, 606 (7th Cir. 1972) ("Although a federal court has power to grant an injunction to stay litigation in a state court, … principles of equity, comity, and federalism dictate restraint in the responsible exercise of that power.… Although those considerations may be less compelling when the state litigation is civil rather than criminal … they require special respect for the state judicial process if federal jurisdiction is not invoked until after state litigation is commenced. Cases such as *Wisconsin v. Constantineau*, 400 U.S. 433 …, in which no state litigation had been commenced, or was even threatened, did not involve the same potential conflict between courts of overlapping jurisdiction.") (*internal*

...

this Court to order Moulton to return to GreenHouse a database wrongfully possessed by Moulton. This Court's *in rem* jurisdiction could be subverted should the California Court mandate arbitration over all issues, including who may possess the database.[14] Thus, even if *in rem* jurisdiction was a pre-requisite to invoke the *All Writs Act*, an injunction against Moulton further proceeding before the California Superior Court is necessary to aid this Court's *in rem* jurisdiction over the database possession issue.[15]

## II.     Moulton's Wrongful Possession Of The Database Exempts Arbitration

Moulton ironically argues that it can simultaneously dispossess GreenHouse of its property yet cry fowl when this dispossession threatens to impede its path to arbitration.

### A.     GreenHouse's Prayer For Injunctive Relief Is Sufficient

Moulton acknowledges that GreenHouse requested injunctive relief, but asserts, without citing any authority, that GreenHouse's Complaint does not sufficiently plead a right to injunctive relief.[16] Moulton does not specify what details are lacking or how it is prejudiced by any alleged lack of detail. More importantly, Moulton ignores the fact that the Federal Rules of

---

*citations omitted*).

[14] 2 Victor B. Woolley, *Woolley's Practice in Civil Actions*, § 1533 (1906) ("The writ of replevin is an original writ. In its nature it is a mixed writ, partly *in rem* and partly *in personam*. Essentially it is a proceeding against the property, the summons to the defendant being accessory and subordinate, so far as the frame of the writ is concerned."); *see also Allstate Ins. Co. v. Rossi Auto Body, Inc.*, 787 A.2d 742, 744-45 (Del. Super. 2001). *Rushton v. Shea*, 419 F.Supp. 1349, 1362-63 (D. Del. 1976) ("This petition was in the nature of a replevin action.… It was an in rem proceeding…") (internal citations omitted).

[15] *See, e.g., James v. Bellotti*, 733 F.2d 989, 993 (C.A. Mass. 1984) ("The "necessary in aid of" language in the Anti-Injunction Act has been read as incorporating a historical exception for cases in which a federal court obtains *in rem* jurisdiction prior to a state-court suit.")(*citing Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641 (1977)).

[16] In addition to requesting an injunction to transfer the Database and restrain Moulton from further unauthorized use in its prayer for relief, GreenHouse pled in Counts I, II, and III that Defendant should be "enjoined from any further unauthorized use of the Database" and pled that GreenHouse is entitled to possession of its Database wrongfully withheld by Moulton. D.I. 1, ¶¶ 60, 66, 70.

5

Civil Procedure only require notice pleading.[17]

      B.      <u>Moulton Sought To Extort Greenhouse By Demanding Release In Exchange For Database</u>

Moulton complains that GreenHouse "waited over seven months" to seek relief from Moulton's unlawful use of its Database information, and that GreenHouse's prayer for injunctive relief lacks a "factual predicate to state a cognizable claim for injunctive relief" because GreenHouse's "concerns of inappropriate use of the Database" do not provide a "sufficient basis to substantiate the threat of immediate, irreparable harm necessary for injunctive relief."

First, Moulton ignores that the parties were trying to resolve the dispute without litigation. Two and a half months before GreenHouse filed its Complaint, GreenHouse's General Counsel sought to avoid litigation by asking Moulton's outside lawyers to intervene and convince Moulton to provide the Database.[18] Moulton responded:

> After speaking with Moulton Logistics Management ("Moulton") and reviewing the relevant information, it is clear that Moulton has already turned over all of the customer data file information to Accretive that it is required to release under the July 1, 2006 Fulfillment Services Agreement (the "Agreement"). The Agreement does not require that Moulton release the "order comments". Additionally, it is not the practice of Moulton to release "order comments" to a competitor.
>
> Moulton's practice is consistent with the practice in the industry. In that regard, Moulton is not aware of any instance in the industry where this has occurred. Importantly, where Moulton has previously taken over clients of Accretive, Accretive has refused to share its "order comments" with Moulton in every instance. This is because the data is proprietary and contains the confidential trade secrets of the respective fulfillment services companies.
>
> Moulton is willing to finally resolve any disputes with Greenhouse. For that reason, Moulton will consider releasing the "order comments" to Greenhouse upon receipt from Greenhouse of the fully executed original of the settlement agreement I previously sent to you in late July 2007.

---

[17] Fed. R. Civ. P. 8 (requiring only "a demand for the relief sought" (8(a)); that "[e]ach allegation must be simple, concise, and direct" (8(d)); and that "[p]leadings must be construed so as to do justice" (8(e)).
[18] Exhibit A ("Ex. A") p. 2 (filed herein under seal).

Another updated copy of the proposed settlement agreement is attached.

Please call me with any questions.[19]

Given that this exchange occurred in mid-August 2007 and that GreenHouse filed its Complaint on November 9, 2007, it is disingenuous for Moulton to suggest any undue delay[20] in GreenHouse's prayer for injunctive relief. GreenHouse was forced to file this case because Moulton refused to return the Database unless GreenHouse released Moulton from any liability for its other breaches. The minimal delayed before the filing of this suit was only the result of GreenHouse's attempt to resolve the dispute by negotiation. These circumstance can not justify a denial of otherwise proper injunctive relief.

Moulton's response also demonstrates that there is an undeniable equitable dispute over whom may rightfully possess the Database and any components thereof. Moulton's claim of proprietary ownership over the order comments alone is "factual predicate" for an injunction ordering the transfer to GreenHouse of its own information. Moulton's hostile response, which does not allege any lack of payment to justify its withholding, demonstrates that GreenHouse's prayer for injunctive relief from this Court is made in good-faith.[21] This good-faith basis for seeking equitable relief triggers the exception to the arbitration clause. So long as injunctive relief is sought in good-faith, an arbitration mandate is not appropriate.

Finally, Moulton's offer to release the order comments on condition that GreenHouse fully execute a settlement and release of all claims against Moulton undermines the entire

---

[19] Ex. A, p. 1.
[20] Notably, Moulton does not assert laches or estoppel.
[21] D.I. 1, p. 20. GreenHouse's prayer to restrain (*id*.) Moulton from inappropriate use of the Database, or copies thereof, might require discovery to prove Moulton's improper intentions, but this is separate and apart from GreenHouse's prayer to obtain at least its own copy of the entire Database. Also, the need to discover and prove additional facts currently known only to

7

rationale articulated by Moulton for withholding the Database and demonstrates Moulton's use of the Database as leverage over GreenHouse. Moulton can not simultaneously claim it has the right to deny GreenHouse the right to possess its own information and avoid equitable litigation over this issue.

### C.  The Arbitration Clause Exemption Is Unambiguous Despite Moulton's Attempts To Inject Vagary

The relevant portion of the Agreement's arbitration provision is:

> Any controversy or claim arising out of or related to this Agreement or breach thereof, except when injunctive relief or specific performance is sought, shall be settled by arbitration.[22]

Moulton argues that the words "or" and "arising" are critical to the construction of this clause, and scrutinizes the grammatical structure of the verbs and adverbs. Moulton's grammar lesson, however, errs in two major respects. First, Moulton ignores the commas in the sentence, which set off the entire exception sub-clause. The set-off indicates that the exception applies to the entire main clause, i.e., "any controversy or claim" not to a narrower subset within the main clause. This point is further reinforced by Moulton's second mistake. Moulton is correct that "*when*" is an adverb that modifies a verb. But Moulton gets the verb wrong. "*When*" does not modify "*arising*". "*When*" modifies "*is sought*". So "*when*", which indicates the time at which the exception is triggered, modifies the trigger, the *seeking* of injunctive relief or specific performance. Moulton's clever ploy to inject vagary by suggesting an alternative meaning falls flat. The trigger to the exception, *i.e.*, the seeking of injunctive relief, is clearly articulated. There is no stated limit on what is to be excepted once the trigger is pulled.

---

Moulton, cannot be a basis to find that GreenHouse's request for an injunction lacks merit.
[22] D.I. 6-2, ¶ 14(g).

8

### D. Moulton Does Not Have The Right To Deny Greenhouse The Database

Moulton next tries to hide behind its alleged right to "suspend all services, including access to [Plaintiff's] data and Database, in the event that [Plaintiff's] account is not current and will not resume work until [Plaintiff's] account is brought to current terms."[23] First, GreenHouse does not agree, and contrary to Moulton's suggestion has never conceded, that its accounts are not current.[24] GreenHouse believes it has paid all amounts owed to Moulton and that it is Moulton that owes a deficit to GreenHouse. In fact, GreenHouse paid more than it believes it should have in an effort to quickly resolve the dispute, to no avail. In any event, Moulton's naked allegation that GreenHouse remains delinquent on accounts is not sufficient to summarily decide that GreenHouse is not entitled to injunctive relief.

### CONCLUSION

On the basis of the foregoing analysis of fact and law, Plaintiff, GreenHouse International, Inc., respectfully requests that the Court enjoin Moulton from proceeding with its Petition to Compel Binding Arbitration in the Superior Court of California, in and for Los Angeles County.

---

[23] D.I. 6-2 at ¶ 4(h)(1).

[24] Moulton's assertion that GreenHouse admits to account deficiencies strains credibility. The GreenHouse declaration stated: "[s]ome of the alleged account deficit issues stemmed from GreenHouse's dispute of charges and services." D.I. 9-2 at ¶ 18. GreenHouse never admitted nor even suggested that it owes any money as alleged by Moulton. Additionally, GreenHouse explained in its Complaint that it "notified [Moulton] prior to and at [the time services were withheld] that there were disputed charges in excess of the amount [Moulton] claimed was due," and further explained that it had wired partial payment, and submitted post-dated checks to Moulton for payment of the disputed charges, which Moulton accepted while still refusing to

9

Respectfully Submitted,


DATE: February 15, 2008                WOMBLE CARLYLE SANDRIDGE &
                                       RICE, PLLC

                                       */s/  James M. Lennon*
                                       George Pazuniak (#478)
                                       James M. Lennon (# 4570)
                                       Anna Martina Tyreus (# 4771)
                                       222 Delaware Avenue, Suite 1501
                                       Wilmington, DE 19801

                                       *Attorneys for Plaintiff, GreenHouse
                                       International, LLC*

---

provide GreenHouse full access to the Database. D.I. 1 at ¶¶ 39, 40.  And, as note above, Moulton's letter denying GreenHouse its order comments asserted a bizarre theory of trade secrets and proprietary rights, rather than "account deficiency", as its basis for withholding.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, copies of the foregoing motion, brief and exhibit were electronically filed with the Clerk of the Court using CM/ECF and served on the following in the manner indicated :

<u>VIA EMAIL AND HAND DELIVERY</u>
Joseph James Bellew
Cozen & O'Connor
Chase Manhattan Centre
1201 North Market St., Suite 1400
Wilmington, DE 19801

This 15th day of February, 2008.

/s/  *James M. Lennon*
James M. Lennon (DE # 4570)

WCSR  3838196v2

# Exhibit A

Confidential

Filed Under Seal